UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| JESSE HIGGINS,<br><br>        Plaintiff,<br><br>vs.<br><br>UPSHAW CONSULTING SERVICES, LLC; CONTINENTAL RESOURCES, INC.; and FLUID END SALES, INC. D/B/A FIVE STAR RIG & SUPPLY,<br><br>        Defendants. | CIV. 16-5010-JLV<br><br>ORDER |

## INTRODUCTION

Plaintiff Jesse Higgins brought this personal injury diversity action against defendants Upshaw Consulting Services, LLC ("Upshaw"), Continental Resources, Inc. ("Continental"), and Fluid End Sales, Inc. d/b/a Five Star Rig & Supply ("Five Star"), following an oil rig injury.[1] (Docket 43). Plaintiff originally hired counsel to prosecute this action on his behalf. However, the court permitted plaintiff's counsel to withdraw and was unable to appoint replacement counsel. (Dockets 89 & 112). Plaintiff is proceeding *pro se* and is presently incarcerated.

---

[1]Defendants raised a number of cross claims and third-party claims, but the court dismissed those claims upon defendants' stipulation. (Docket 104). The only claims remaining in this action are plaintiff's.

Defendants Five Star and Continental filed motions for summary judgment. (Dockets 93 & 117). Defendants also jointly moved to stay discovery pending resolution of those motions. (Dockets 96, 98 & 99). The court granted plaintiff five extensions of his deadline to respond to the defense motions and set a final deadline of January 17, 2020, for his responses. (Dockets 105, 112, 114, 116 & 126). Plaintiff did not file any responses.

For the reasons given below, the court grants summary judgment to defendants Five Star and Continental. The court further extends the deadline for defendant Upshaw to file a summary judgment motion.

**I.     Facts**

The following factual recitation is derived from plaintiff's amended complaint, Five Star's and Continental's statements of undisputed material facts, and other record evidence where appropriate. (Dockets 43, 95 & 118). Defendants' statements of undisputed material facts are deemed admitted because plaintiff failed to controvert them. Fed. R. Civ. P. 56(e)(2); D.S.D. Civ. LR 56.1(D). The facts are viewed in the light most favorable to plaintiff, the non-moving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986).

In February of 2014, plaintiff was employed as a rig hand by Cyclone Drilling, Inc. ("Cyclone").[2] (Dockets 43 at ¶ 6 & 118 at ¶ 3). Continental hired

---

[2]The court granted Five Star permission to implead Cyclone as a third party defendant. (Docket 61). Cyclone was dismissed from the case pursuant to the defendants' joint stipulation. (Docket 104).

Cyclone to drill for oil in Harding County, South Dakota. Id. Cyclone agreed in its contract with Continental that it was an independent contractor and that its employees were not employees of Continental.[3] (Docket 119 at p. 2). Cyclone employed Paul Hildebrant and Tyler Yackley, who served as the rig's manager—referred to as a "toolpusher"—and driller, respectively. (Docket 118 at ¶¶ 6, 9, & 11). Mr. Yackley, as the rig's driller, operated the rig and supervised plaintiff. Id. at ¶¶ 12, 14.

Continental hired Dakota Territory Consulting ("DTC") as an independent contractor to represent it on plaintiff's rig. Id. at ¶¶ 15-16. DTC employed Joel Young as Continental's "company man" assigned to the rig. Id. at ¶ 15. Mr. Young was responsible for managing the rig's drilling plan. Id. at ¶ 17. Part of his supervisory responsibilities involved ordering regular surveys to monitor any angular deviation of the drill shaft. Id. Mr. Young did not direct Cyclone employees' performance of the surveys. Id. at ¶ 25.

Deviation surveys are performed with a tool called a wireline machine. Id. at ¶ 21. The wireline unit consists of a wire attached to a survey tool, operated by a motor. Id. at ¶ 26. The survey tool weighs approximately 10 pounds. Id. The unit works by dropping the survey tool down the drill shaft. Id. The machine operator then reels the tool back up the shaft using the motor. Id.

---

[3]Continental did not file a complete copy of its contract with Cyclone. It did file a copy of its contract with Upshaw. (Docket 47-1). The contractual language cited in Continental's brief is identical to the language from its contract with Upshaw. The court presumes the contracts are identical, as they appear to be form documents.

The operator controls the speed that the tool is reeled up the shaft. Id. The tool reports the shaft's deviation. Id.

On or before February 7, Mr. Young instructed Mr. Hildebrant and Mr. Yackley to perform a survey of the drill shaft's inclination. Id. at ¶ 28. Mr. Yackley assigned the task of operating the wireline unit on February 7 to plaintiff. Id. at ¶ 29. Mr. Young did not know plaintiff would operate the unit. Id. at ¶ 23. When plaintiff used the unit to reel the survey tool out of the drill shaft, the wire "did not slow as it neared the stop of the drilling hold, but instead accelerated." Id. at ¶ 30. Mr. Hildebrant testified in a deposition that plaintiff caused the acceleration by accidentally increasing the reeling speed.[4] (Docket 120-1 at p. 9). The survey tool attached to the wire emerged from the drill shaft "at a higher speed than safe" and hit the top of the rig. Id. at ¶ 32. The impact broke the welds holding the wireline machine in place. Id. The unit fell on top of plaintiff, causing "multiple serious bodily injuries[.]" (Dockets 43 at ¶ 34 & 118 at ¶ 33).

Plaintiff alleged Five Star manufactured the wireline unit at issue. (Docker 43 at ¶ 52). He asserted the unit was defective and was "not labeled with any instructions to inform the user which direction to turn the governor valve to slow or stop the hydraulic winch." Id. at ¶ 54. In its answer, Five Star asserted the unit was "modified" and denied it manufactured the unit in the state

---

[4] Chad Stout testified plaintiff caused the acceleration by turning a valve on the wireline machine the wrong way. (Docket 120-3 at p. 4). The portions of Mr. Stout's deposition on file with the court do not identify his role in the incident, but he appears to be a Cyclone employee.

which harmed plaintiff. (Docket 52 at ¶ 54). Five Star denied plaintiff's labeling claim. Id. at ¶ 56. Five Star's statement of undisputed material facts does not contain any facts about its alleged role in the accident or plaintiff's injuries. (Docket 95).

On May 9, 2018, plaintiff was indicted by a South Dakota jury on felony charges. (Docket 88-1) (indictment filed *ex parte*). Plaintiff was convicted in state court and sentenced to 15 years of incarceration. See South Dakota Dep't. of Corrs., Offender Locator, available at https://doc.sd.gov/adult/lookup/ (last visited Feb. 12, 2020). Plaintiff was federally indicted on June 19, 2018, and was sentenced to two years of incarceration consecutive to his state sentence. United States v. Higgins, CR. 18-50072 (Dockets 2 & 47).

## II. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(a), a movant is entitled to summary judgment if the movant can "show that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once the moving party meets its burden, the nonmoving party may not rest on the allegations or denials in the pleadings, but rather must produce affirmative evidence setting forth specific facts showing that a genuine issue of material fact exists. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). Only disputes over facts which might affect the outcome of the case under the governing substantive law will properly preclude summary judgment. Id. at 248. "[T]he mere existence of *some* alleged factual dispute between the

5

parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Id. at 247-48 (emphasis in original).

If a dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party, then summary judgment is not appropriate. Id. However, the moving party is entitled to judgment as a matter of law if the nonmoving party failed to "make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In such a case, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

In determining whether summary judgment should issue, the facts and inferences from those facts must be viewed in the light most favorable to the nonmoving party. Matsushita, 475 U.S. at 587-88 (1986). The key inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52.

These standards govern despite plaintiff's failure to respond to the pending summary judgment motions. See Mack v. Dillon, 594 F.3d 620, 622 (8th Cir. 2010). "Summary judgment must be denied even if no opposing evidentiary

6

matter is presented" if the moving party cannot meet the Rule 56 standard.

Heath v. John Morrell & Co., 768 F.2d 245, 249 (8th Cir. 1985).

## III. Analysis

This case is before the court on its diversity jurisdiction. Accordingly, South Dakota substantive law governs. O'Neal v. Remington Arms Co., LLC, 817 F.3d 1055, 1060 (8th Cir. 2015).

### A. Five Star

Plaintiff's allegations against Five Star, although crafted by counsel, are not a model of clarity. In a count simply titled "liability of Five Star," plaintiff alleged the following:

1. The wireline machine unit "was in a defective condition which made it unreasonably dangerous[.]" (Docket 43 at ¶ 53). The defect existed when the unit left Five Star's control and reached plaintiff "without a substantial unforeseeable change in its condition." Id. at ¶¶ 55, 57. The unit was not "reasonably fit for the ordinary and foreseeable purposes for which it was sold or manufactured and expected to be used." Id. at ¶ 59. The defect proximately caused plaintiff's injuries. Id. at ¶ 62.

2. The unit could have been designed to "prevent foreseeable harm" and the reasonable alternative design would "have reduced the foreseeable risk of harm" "at reasonable cost[.]" Id. at ¶¶ 58, 60. The "omission of the alternative design rendered the . . . unit not reasonably safe." Id. at ¶ 61.

3. The unit "was not labeled with any instructions to inform the user which direction to turn the governor valve to slow or stop the hydraulic winch[.]" Id. at ¶ 54. The unit could have been labeled "to prevent foreseeable harm." Id. at ¶ 58.

7

The court construes plaintiff's complaint to allege counts of strict liability for defective product design and failure to warn.[5] Both claims fail because plaintiff did not support them with expert testimony.

### 1. Strict liability product defect

In South Dakota, a manufacturer "is strictly liable for physical harm caused by a product in a defective condition unreasonably dangerous to the user[.]" Karst v. Shur-Co., 878 N.W.2d 604, 609 (S.D. 2016). To prove a strict liability product defect claim, plaintiff must show:

1. The wireline unit was "in a defective condition unreasonably dangerous to the user;"

2. The defect existed when the unit "left the control" of Five Star;

3. The unit "was expected to and did reach" plaintiff "without a substantial unforeseeable change in the condition the product was in when it left" Five Star's control; and

4. The defect was a proximate cause of plaintiff's injuries.

See South Dakota Pattern Jury Instruction 20-120-10.

Five Star argues plaintiff cannot maintain his product defect claim because he failed to identify any expert witnesses by the deadlines set in the court's scheduling orders. (Docket 94 at pp. 2, 4-6). The court set a deadline of November 27, 2018, for disclosure of plaintiff's experts. (Docket 93 at p. 2). This deadline was after the court permitted plaintiff's counsel to withdraw. (Docket 89). Five Star asserts in its briefing—but, confusingly, not in its statement of undisputed material facts—that plaintiff did not identify any

---

[5]To the extent plaintiff intended to assert negligence claims, they also fail for lack of expert testimony.

8

experts.[6]  (Docket 94 at p. 2).  Given that plaintiff was without counsel and very likely incarcerated when the deadline passed, the court finds he did not disclose any experts.

"Product liability often 'involves technical issues which do not easily admit to evidentiary proof and which lie beyond the comprehension of most jurors.' " Nationwide Mut. Ins. Co. v. Barton Solvents Inc., 855 N.W.2d 145, 151 (S.D. 2014) (quoting Burley v. Kytec Innovative Sports Equip., Inc., 737 N.W.2d 397, 407 (S.D. 2007)).  "Expert testimony is generally necessary to establish elements of negligence and strict liability."  Id.  "[I]n attempting to establish the elements of products liability, unless it is patently obvious that the accident would not have happened in the absence of a defect, a plaintiff cannot rely merely on the fact that an accident occurred."  Id. (internal quotation omitted).  "It is not within the common expertise of a jury to deduce merely from an accident and injury that a product was defectively designed."  Burley, 737 N.W.2d at 407.

This is not a case where a jury could infer the presence of a defect simply from the facts of the accident.  On the facts as presented to the court, the wireline unit fell on top of plaintiff after the survey tool ejected from the drill shaft at high speed and collided with the top of the rig.  The collision caused the welds connecting the unit to the rig to break.  It appears likely that the collision, or perhaps issues with the welding, caused the unit to fall on plaintiff.  Expert

---

[6]Expert disclosures are not filed with the court.  (Docket 91 at p. 2).  The court has no direct evidence corroborating Five Star's assertion that plaintiff did not disclose any experts.

9

testimony would be needed to establish that an unreasonably dangerous defect in the unit itself caused the fall. Plaintiff produced no expert testimony on the issue of causation. Five Star is entitled to summary judgment. Burley, 737 N.W.2d at 407-08.

### 2. Failure to warn

Five Star also argues plaintiff needs expert testimony to prove his failure to warn claim. (Docket 94 at pp. 6-7). To prove a strict liability failure to warn claim, plaintiff must show:

1. a danger existed associated with a foreseeable use of the product;

2. an inadequate warning was given regarding the danger;

3. as a result of the inadequate warning, the product was rendered defective and unreasonably dangerous;

4. the defective and unreasonably dangerous condition existed at the time it left the control of the manufacturer;

5. the product was expected to and did reach the user without a substantial unforeseeable change in the condition that it was in when it left the manufacturer's control; and

6. the defective condition was the legal cause of [plaintiff's] injuries.

Burley, 737 N.W.2d at 409; see also South Dakota Pattern Jury Instruction 20-120-40. "The issue under strict liability is whether the manufacturer's failure to adequately warn rendered the product unreasonably dangerous . . . . the product itself need not be defective." Id. (internal quotations omitted). Plaintiff "must establish a causal relationship between [Five Star's] failure to warn and [his] injury." Id. at 410.

10

Five Star's inexplicable failure to adduce relevant facts does not assist the court's analysis. Plaintiff alleged in his complaint the wireline unit "was not labeled with *any* instructions" regarding the mechanisms to slow the reeling of the wire. (Docket 43 at ¶ 54) (emphasis added). Five Star declined to inform the court whether its unit bore instructions or warning labels. If it is indeed true that Five Star completely failed to label its unit or otherwise provide direction on the proper use of the reeling mechanisms, a properly supported failure to warn claim would be far from frivolous.[7]

Nevertheless, the present record would not allow a jury to infer Five Star's alleged failure to warn caused plaintiff's injuries. "[T]he fact that an accident occurred . . . does not perforce mean that [Five Star's] failure to warn was the legal cause" of plaintiff's injury. Burley, 737 N.W.2d at 410. As noted above, it appears likely the unit's fall was caused by the collision between the survey tool and the rig or welding issues. Plaintiff must show it is foreseeable that the survey tool would collide with the rig if ejected from the drill shaft at high speed because a user improperly sped up the wire reeling, causing the unit to fall; that Five Star failed to warn about that danger; and that the failure to warn proximately caused plaintiff's injuries. At the very least, expert testimony would be required to show a user's improper use of the reeling motor would foreseeably cause a unit to fall.

---

[7]If Five Star had adduced evidence of providing a warning—"even if the warning [was] arguably inadequate"—summary judgment would be appropriate because there is no evidence in the record that plaintiff read any warnings. Karst, 878 N.W.2d at 613-14.

"This is not one of those cases in which it is patently obvious that the accident would not have happened but for an inadequate warning." Barton Solvents, 855 N.W.2d at 151. Five Star is entitled to summary judgment on plaintiff's failure to warn claim.

### B. Continental

Plaintiff alleges Continental "retained supervisory control" over Cyclone's "operations at the well site." (Docket 43 at ¶ 18). He then alleges Continental "negligently exercised its retained control" in a number of ways, causing his injuries. Id. at ¶¶ 19, 34. Continental argues it had no legal duty to protect plaintiff from harm because its independent contractor, Cyclone, was plaintiff's employer. (Docket 119 at pp. 4-9). The court agrees and grants summary judgment to Continental.

To prove his negligence claim, plaintiff must show: "(1) a duty on the part of [Continental]; (2) a failure to perform that duty; and (3) an injury . . . resulting from such a failure." Kuehl v. Horner (J.W.) Lumber Co., 678 N.W.2d 809, 812 (S.D. 2004) (internal quotation omitted).

> Before liability may be imposed on the theory of negligence there must be a duty on the part of the defendant to protect a plaintiff from injury. While negligence actions are generally not suited for summary judgment, such a result is proper when the duty question is resolved in the defendant's favor. The existence of such a duty is a question of law[.]

Id. (internal citations omitted).

"[O]ne who hires an independent contractor generally does not have a duty to insure the contractor performs his work in a safe manner." Clausen v.

Aberdeen Grain Inspection, Inc., 594 N.W.2d 718, 721 (S.D. 1999). However, this general rule is subject to many exceptions. See Haufle v. Svoboda, 416 N.W.2d 879, 880 (S.D. 1987); see also Restatement (Second) of Torts §§ 410-429 (1965) (laying out exceptions). The exception identified in the complaint "is where the employer was directly negligent in exercising retained control over the work[.]" Clausen, 594 N.W.2d at 721 (internal quotation omitted).

"In determining whether an individual is an employee or an independent contractor, each case must be determined on its own facts and all the features of the relationship are to be considered." Egemo v. Flores, 470 N.W.2d 817, 820 (S.D. 1991). In South Dakota,

> two primary factors [are] used to determine whether one is an employee or an independent contractor:
>
> (1) Whether the individual has been and will continue to be free from control or direction over the performance of the services, both under contract of service and in fact; and
>
> (2) Whether the individual is customarily engaged in an independently established trade, occupation, profession or business.

Davis v. Frizzell, 504 N.W.2d 330, 331 (S.D. 1993).

Continental asserts it did not have sufficient control over plaintiff's work to support his negligence claim. (Docket 119 at pp. 6-9). In particular, it asserts the only role it had in the survey process that resulted in plaintiff's injury was ordering it. Id. at pp. 6-7. Continental concedes its representative, Mr. Young, directed the Cyclone employees to perform the survey, but argues the manner of

13

performing the survey was outside its control.[8]  Id.  In particular, Continental notes Mr. Young did not even know plaintiff would perform the survey.  Id. at p. 6.

Turning to the first factor, the "right of control" test, the contract between Continental and Cyclone provided that Cyclone's employees, like plaintiff, are not employees of Continental.  (Docket 119 at p. 2).  It also appears plaintiff, as a Cyclone employee, was not controlled by Continental in the performance of his duties.  Plaintiff was supervised on a day-to-day basis by Mr. Yackley, the Cyclone driller.  In his complaint, plaintiff alleged that Continental maintained control over operations on the rig through its company man, identified by Continental as Mr. Young.[9]  (Docket 43 at ¶ 15).  But the evidence before the court shows Mr. Young had no direct control over plaintiff's work, at least with respect to the survey at issue here.  The court finds Continental did not control plaintiff's survey work.

The second factor, the "independently established trade or business" test, "require[s] [plaintiff] have some relationship with an economic enterprise that is

---

[8]Although Mr. Young was Continental's "company man" on the drill site, it appears he was not directly employed by the company.  (Docket 118 at ¶¶ 15-16).  Since Continental appears to assume that distinction is irrelevant, the court need not consider the matter further.

[9]The complaint also alleges Continental controlled the drill site through "periodic inspections" by Upshaw to identify "safety risks and deficiencies." (Docket 43 at ¶ 16).  Plaintiff further asserts Continental required Cyclone to carry out a safety program.  Id. at ¶ 17.  Even taking these allegations as true, they do not demonstrate that Continental controlled the performance of plaintiff's work duties on the present factual record.

independent of the company" allegedly employing him.   Moonlight Rose Co. v. S.D. Unemployment Ins. Div., 668 N.W.2d 304, 310 (S.D. 2003).   This factor appears to most often be at issue when questions arise whether individual workers are employees or independent contractors for a company.   See Moonlight Rose, 668 N.W.2d at 306-07 (street salesmen); Davis, 504 N.W.2d at 330-31 (used car lot manager); Appeal of Hendrickson's Health Care Serv., 462 N.W.2d 655, 656 (S.D. 1990) (home health care workers).

Here, plaintiff was not hiring himself out to multiple drilling companies. He was an employee of Cyclone.   The record evidence establishes only that Cyclone was an independent contractor of Continental.   The court does not know if Cyclone performed drilling work for other oil companies.   In general, there is little evidence whether Cyclone was "customarily engaged in an independently established . . . business."   Davis, 504 N.W.2d at 331.

Given the record evidence showing Continental's lack of control over plaintiff's work duties and Cyclone's contractual agreement to independent contractor status, the court will not weigh the independently established business factor heavily.   Examining this case "on its own facts[,]" the court is satisfied Continental established it owed no duty to plaintiff as the employee of its independent contractor.   Egemo, 470 N.W.2d at 820.   Accordingly, Continental is entitled to summary judgment on plaintiff's negligence claim.

### C. Upshaw

Upshaw did not file a summary judgment motion. The time to file dispositive motions passed on June 11, 2019. (Docket 91 at p. 2). If Upshaw intends to proceed to trial on the negligence claim brought against it, Upshaw must promptly inform the court so trial arrangements can be made.

If, however, Upshaw intends to move for summary judgment, the court will reset the motions deadline. The court's pretrial deadlines may only be modified "for good cause[.]" Fed. R. Civ. P. 16(b)(4). Plaintiff's incarceration and his refusal or inability to participate in the summary judgment proceedings up to this point present a unique circumstance. The court finds forcing a complex personal injury case to proceed to trial with an incarcerated, *pro se* plaintiff for want of a deadline extension could waste judicial resources.[10] Accordingly, the court finds good cause exists to reset the motions deadline. The court will allow Upshaw until **March 30, 2020**, to file any dispositive motion.

### IV. Conclusion

The court acknowledges the one-sided nature of the record likely distorts what appears to be a complex personal injury case that could have been, in other circumstances, meritorious. Although summary judgment is appropriate on the present record, this order is of no precedential value in future products liability or independent contractor cases.

---

[10]The court does not imply it will automatically grant Upshaw's motion for summary judgment, if one is filed, merely to save judicial resources.

**ORDER**

For the reasons given above, it is

ORDERED that defendant Five Star's motion for summary judgment (Docket 93) is granted.

IT IS FURTHER ORDERED that defendant Five Star's motion to stay discovery (Docket 96) and defendant Continental's motion for joinder (Docket 98) are denied as moot.

IT IS FURTHER ORDERED that defendant Continental's motion for summary judgment (Docket 117) is granted.

IT IS FURTHER ORDERED that Upshaw has until **March 30, 2020**, to file any dispositive motions.

Dated February 25, 2020.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
UNITED STATES DISTRICT JUDGE